East'n District.
*May*, 1823.

HONORE
*vs.*
WHITE & AL.

---

*REYNAUD & SUCKO* vs. *GUILLOTTE & BOISFON-TAINE.*

1NS 227
f123 1109

APPEAL from the court of the parish and city of New-Orleans.

PORTER J. The petition sets forth that on the 24th February 1821, the defendants sold to the plaintiff a negro boy named Tommy, about 23 years old, for the sum of $900 and warranted him free from all redhibitory vices and diseases: that at the time of the sale the slave was afflicted with ulcers on his leg, and that the defendants knew it, but made false representations respecting his health; that the said ulcers are of an old standing; and that notwithstanding all the care, trouble and expense, which the petitioners have been put to, the slave is almost entirely unfit for the work and labour for which he was destined;

Prescription in redhibitory actions runs from the time the defects in the slave are known to the purchaser.

East'n District.
May, 1823.

REYNAUD &
SUCKO
vs.
GUILLOTTE &
BOISFONTAINE

and finally, that the use of said slave is rendered so inconvenient for them, that had they been informed of his true situation, they would not have bought him.

The answer avers, that the negro at the time of the sale was not afflicted with ulcers; that if he was, the sale cannot be rescinded; and that owing to the want of care in the plaintiffs, the slave has been injured in value to the amount of $500. With leave of the court the plea of prescription was afterwards added.

The cause was submitted to a jury, who found for the defendants. A new trial was granted, and the parties consented to wave the jury and submit the case to the court. The judge decided that the sale should be rescinded, and the plaintiffs pay at the rate of $20 per month for the time they used the slave not knowing of his defects. The defendant appealed.

The first question to be decided is the plea of prescription. The action was commenced nine months and twenty-four days after the date of the sale.

Dr. Ker, a witness on the part of the plaintiff, swear that he went to visit the negro on

the 30th March, and left off attendance the 25th May; that when he first saw him the disease appeared of long standing, which, if healed speedily, would soon break out again, and that he told the plaintiff so when he desisted from visiting the slave.

East'n District.
May, 1823.

REYNAUD &
SUCKO
vs.
GUILLOTTE &
BOISFONTAIN

Dr. Chabert deposed that he went to visit the negro on the last days of October, and he ceased to see him at the close of December; that when first called in, the plaintiff did not appear to be aware of the extent of the disease, and asked if it was curable; he thinks there is little hope of its being cured.

It is the duty of the buyer, who brings his action after six months have elapsed, to prove when the knowledge of the defects of the slave was acquired by him. A question arises out of the evidence in this case, whether the prescription runs from the time the disease was known to exist, or from the time it was ascertained to be such as would form the ground of redhibition. We think from the latter, for until the purchaser was instructed that he had a right of action, he was not in delay by not bringing it. He cannot be accused of negligence while the nature of the disease was unknown to him, and he was con-

East'n District.
*May,* 1823.

REYNAUD &
SUCKO
*vs.*
GUILLOTTE &
BOISFONTAINE

ferring a benefit on the vendor, by attempting to cure it. In the case of *Theard* vs. *Chretien,* we said that if the plaintiff had proved any circumstance respecting the time when he acquired a knowledge of the vice, we should have held it sufficient to throw the burthen of proof on the seller, to show that he knew it earlier. In that now before us it is proved by one of the witnesses that the plaintiff did not seem aware that the disease was incurable in the month of October, and up to the 31st July the negro was not prevented, by sickness, from working. So that whether we take as the basis of this action the slave being afflicted with an incurable disease, or having one which, though not incurable, was known to the vendor at the time of the sale, and rendered his services so difficult and interrupted, that if the purchaser had been aware of its existence, he would not have made the acquisition—the plea of prescription must be rejected.

The disposing of this question brings us to the merits. On the ground of the disease being incurable, we have the testimony of two physicians. The first attended the slave two months and was unable to cure him; he considers the disease as one of those which it

it would be difficult to heal, or if healed spee-
dily, that it would break out again.   The evi-
dence of Dr. Chabert is more explicit; he
states that he is certain the ulcers are more
than a year old; he describes the disease
with exactness, and details what he conceives
would be the best method of effecting a cure,
and finishes by declaring that there is little
hope of the   disease   being   removed.—( *peu
d'espoir de guérison.*)

On that of the disease being known to the
vendor, and that it is such as to render the ser-
vices of the slave so difficult, and interrupted,
that if the purchaser had known it he would not
have bought.   *Fouchet*, deposes that since the
plaintiff purchased the slave he has been sick
two months. *Lemager* states that he has been sick
several times, sometimes for fifteen days, and
sometimes for a month at a time, during which
periods he was entirely prevented from doing
any work.   There is none of the witnesses
who prove in direct terms that the vendor
knew of the existence of the defect in the
slave at the time he sold him.   The proof on
that head is the testimony of the medical per-
sons, who state that the ulcers were of long
standing.   Opposed, however, to their evi-

East'n District.
*May*, 1823.

REYNAUD &
SUCKO
*vs.*
GUILLOTTE &
BOISFONTAINE

dence we have the testimony of one witness introduced by the plaintiff, who swears that he knew the negro about a year before the sale, and that he was in good health then. And Dr. Thomas, deposes that about five months before the date of the sale, he attended the slave for a venereal affection, and cured him perfectly.

This evidence, though going far to show that the disease is incurable, does not completely establish it. The first physician expresses no positive opinion—the declaration that the sores would be difficult to heal, implies that it is possible they may be. And, the second, although he seems to have a more decided conclusion formed in his mind, does not pronounce the slave to be incurable; he says the nature of the disease leaves little hope that it can be cured.

Neither does the evidence prove that the disease was known to the vendor previous to the sale. The physicians, it is true, declared that the disease must have existed at and before the date of sale, but it is too much to infer knowledge in the vendor from this circumstance, particularly when we are informed that for six months after the slave was pur-

ehased he was not prevented from working. It is believed that slaves are often afflicted with ailments unknown to their masters, and though the testimony does certainly raise a presumption that this owner might have known the disease, still it is not sufficiently strong to enable such conclusion to be confidently drawn.

The judgment of the parish court should be annulled, avoided, and reversed, and judgment be for the defendants, with costs in both courts.

MARTIN, J. I concur in the opinion of Judge Porter, as to the plea of prescription.

On the question of fact, the incurability of the slave's sores, I think the decision of the first judge ought not to be disturbed. He heard the witnesses' testimony from their own mouths, and had the opportunity of interrogating them; and I believe that independently of this circumstance, my mind would have come to the same conclusion.

Two physicians have been examined; Dr. Kerr informs us that when he first saw the slave, the disease appeared to have been of long standing, and one of those which, if healed speedily, would soon break out again; this

East'n District.
May, 1823.

REYNAUD &
SUCKO
vs.
GUILLOTTE &
BOISFONTAINE

implies his belief perhaps, that if the proper length of time was taken to heal the sores, they would not break out again. But this was his first impression, and when, after two months attendance he discontinued his visits, he appears to have been of a different opinion; for he told the owner, he thought the disease would be difficult to heal, and if healed at all, would break out again.

Hence I conclude, he thought no radical cure could be effected. It is true he swears that he told the owner he thought the disease difficult to cure, &c. without swearing he actually thought so. But physicians, like all other professional men, have duties incident on their profession, which they cannot, without reason, be presumed to disregard. Dr. Kerr could not tell to his employers that he thought the disease difficult of cure, &c. if he did not really think it such, without being guilty of very gross prevarication, and the idea of so base a dereliction of duty cannot find admittance in my mind.

Impressed then with the opinion that one of the two doctors, on whose testimony I am to base my judgment, was that the disease was difficult to heal, but if it yielded to the medi-

East'n District.
*May*, 1823.

REYNAUD &
SUCKO
*vs.*
GUILLOTTE &
BOISFONTAINE

cal art, so far that the sores might be healed, the sores would break out again—that the other, Dr. Chabert, entertained but little hopes of a cure; I cannot conclude that the parish judge drew an illogical conclusion from the testimony, when he held that the incurability of the disease was satisfactorily proven. The medical science is one of conjecture, and the conjectures of the professors of it, must by a magistrate not conversant in it, be taken as approximating more to the truth, than those which he himself can form.

A circumstance appears to militate against the decision of the parish judge. The case was first tried by a jury, who found a verdict for the defendant. I can give but very little weight to it; we have not the evidence which was before the jury; and it is not clear, at least to me, that with that on which the parish judge pronounced, they would have given the same verdict.

I think we ought to affirm the judgment of the parish court.

MATHEWS, J. The concurrence in opinion, of the two judges who precede me in the decision of this cause, in relation to the plea of

East'n District.
May, 1823.

REYNAUD &
SUCKO
vs.
GUILLOTTE &
BOISFONTAINE

prescription made by the defendants, precludes the necessity of further inquiry on that part of the case.

This is a redhibitory action, and the principal facts alleged and attempted to be proved by the plaintiff in its support, are an incurable disease, with which the slave sold to him was afflicted at the time of the sale, and that the defendant knew the existence of said disease. Other diseases and infirmities, except those expressly named in our code, constitute redhibitory defects, when they are incurable, and render the slave, subject thereto, unfit for service, or render his services difficult, inconvenient, and interrupted. Even a curable disease may form a redhibitory defect, when it is proved that the seller was acquainted with said defect, before the sale or at the time it was made.

The evidence in the present case does not, in express or positive terms, prove either that the disease was incurable, or that its existence was known to the seller at the time of sale: but I am inclined to believe that it may be fairly inferred from the testimony of the physicians, that the sores on the negro's leg are of long duration and incurable; and also from

other testimony in the cause, that the defen- dants had knowledge of their existence. Should I admit the probability of coming to other conclusions than those drawn by the pa- rish court on the facts of the cause as proven, still I am not so clearly convinced that any error has been therein committed, as to give my assent to reverse the judgment, and there- fore concur with judge Martin.

*Denis* for the plaintiffs, *Grima* for the defen- dants.